UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


RAIN CII CARBON, LLC                                    CIVIL ACTION

VERSUS                                                 NO. 09-4169

CONOCOPHILLIPS COMPANY                                 SECTION "C"(4)


**O R D E R  and  R E A S O N S**

Before the Court are two motions: Plaintiff's Motion to Remand (Rec. Doc. 6) and

Defendant's Motion to Stay Pending Arbitration (Rec. Doc. 5). Both motions are opposed. After

reviewing the Complaint, the memoranda and attached exhibits, and the applicable law, the

Court grants Defendant's motion and denies Plaintiff's, as set forth herein.

**I. BACKGROUND**

Rain CII Carbon, LLC ("CII") processes coke, which is a byproduct of petroleum

processing, for use in making various metals, including aluminum. In 2005, CII entered into a

contract running through December 2015 to purchase coke from ConocoPhillips Company

("Conoco") and ConocoPhillips (U.K.) Ltd. ("CPUK"), which agreement is hereinafter termed

the "2005 agreement." As part of this agreement, the two parties agreed to a complex formula to

determine the contract price based partially on the Gulf Coast regional price as published in *Pace*

*Petroleum Coke Quarterly*, a reporter regularly relied upon in the coke trade. The 2005

agreement also contained a clause, paragraph 4(c), laying out what would happen if *Pace*

*Petroleum Coke Quarterly* ceased to publish or stopped publishing the Gulf Coast regional price,

or if one of the parties believed that the published price consistently did not reflect the true

market price for coke. In that instance, the parties would attempt to negotiate a "replacement

mechanism" to set the new price. If those negotiations failed, the dispute would be subject to

arbitration as laid out in paragraph 19(b) of the 2005 agreement.

In the Spring of 2008, Conoco expressed concern over the prices it was receiving for

coke and accordingly invoked paragraph 4(c). Negotiations commenced that included several

face-to-face meetings, with a culminating meeting on February 24, 2009. Conoco claims that an

agreement on a replacement mechanism to set a new price for coke—hereinafter termed the

"2009 agreement"—was reached at this meeting. CII claims that no such agreement was reached.

After continued demands for payment pursuant to the alleged 2009 agreement, Conoco

demanded arbitration pursuant to paragraph 19(b) of the 2005 agreement on June 9, 2009. CII

filed the instant suit in the Civil District Court for the Parish of Orleans on June 10, 2009.

Conoco removed the suit to this Court on June 24, 2009.

## II. ANALYSIS

### A. Motion to Remand

Defendant removed this matter to this Court pursuant to 9 U.S.C. § 205, which provides

that

> Where the subject matter of an action or proceeding pending in a State court
> relates to an arbitration agreement or award falling under the Convention [on the
> Recognition and Enforcement of Foreign Arbitral Awards, 3 U.S.T. 2517,
> T.I.A.S. No. 6957, 330 U.N.T.S. 38 (1970), republished as a note following 9
> U.S.C. § 201], the defendant or the defendants may, at any time before the trial
> thereof, remove such action or proceeding to the district court of the United States

for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205. Under this statute, then, the Court must determine whether (1) the parties' arbitration agreement "falls under" the Convention and (2) the dispute "relates to" that arbitration agreement.

For an arbitration agreement to "fall under" the Convention, it must (1) involve an agreement in writing to arbitrate a dispute, (2) provide for arbitration in the territory of a Convention signatory, (3) arise out of a commercial legal relationship, and (4) involve at least one non-American citizen, or involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1144-45 (5th Cir. 1985); 9 U.S.C. §§ 202, 205.  The determination of whether the agreement falls under the Convention will "ordinarily prove quick and easy, without requiring too much merits-like investigation by the district court." *Beiser v. Weyler*, 284 F.3d 665, 672 n.7 (5th Cir. 2002). "If these requirements are met, the Convention requires district courts to order arbitration." *Sedco,* 767 F.2d at 1145. The Fifth Circuit has recognized that there is a strong presumption in favor of arbitration. *See, e.g.*, *Phillips Petroleum Co. v. Marathon Oil Co*., 794 F.2d 1080, 1081 (5th Cir. 1986). As such, "where a contract contains an arbitration clause, there exists a strong presumption that arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Id.* (citations omitted).

Applying this test, the Court concludes that the instant arbitration agreement does fall under the Convention. The Fifth Circuit has noted that the important inquiry in determining

whether there is an agreement in writing to arbitrate the dispute is to determine whether the agreement is broad or narrow. *See Sedco*, 767 F.2d at 1144-45. Assuming the other requirements are met, "a court should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the clause, if the clause is 'broad.' In contrast, if the clause is 'narrow,' arbitration should not be compelled unless the court determines that the dispute falls within the clause." *Id.* at n.10. The arbitration agreement between these parties is clearly a broad agreement, covering "*any* controversy or claims arising out of or relating to this Agreement." Opp at Ex. A (¶19(b)) (emphasis added) (Rec. Doc. 9); *see also Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 165 (5th Cir. 1998) (characterizing as broad an arbitration clause covering "[a]ny dispute, controversy or claim arising out of or in connection with or relating to this Agreement") (citing *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 n.2 (5th Cir. 1993), *cert. denied*, 509 U.S. 923 (1993)).

Plaintiff argues that the instant lawsuit does not arise under the 2005 agreement that contains the cited broad arbitration clause, but under the 2009 agreement, which contains no arbitration clause. The Court is skeptical of this argument, since the 2009 agreement arose from the negotiation process described in the "replacement mechanism" provision of the 2005 agreement and thus would seem to be a controversy "arising out of" the 2005 agreement. *See* Opp. At Ex. A (¶4(c)) (Rec. Doc. 9).[1] Regardless, under *Sedco*, this Court is bound to allow the arbitrator to decide whether this dispute falls under the broad arbitration agreement in the 2005

---

[1] Defendant argues that the 2009 agreement exists and was brokered after the negotiation process described in ¶4(c), while Plaintiff insists that the 2009 agreement was never finalized and does not exist. Regardless of the facts, it is clear that the instant dispute "arises out of" and "relates to" ¶4(c) of the 2005 agreement, which is covered by the arbitration clause, ¶ 19.

agreement.

The Court also rejects Plaintiff's argument that the arbitration agreement is void because it does not explicitly name a *situs* for arbitration that is within the territory of a Convention signatory. The arbitration agreement does state that the arbitration shall be "administered by the American Arbitration Association ("AAA")" under rules existing at the time the arbitration is commenced. *Id.* (¶19(b)). Those rules permit the AAA to choose a *situs* for arbitration with the acquiescence of both parties, and the AAA has already chosen one—New Orleans, Louisiana —that is within the territory of a Convention signatory. *See id.* at Ex. B (ICDR letter). The Court holds that such a clause meets the second requirement of the test to determine whether an agreement "falls under" the Convention. *See, e.g.*, *Pioneer Natural Resources, U.S.A. v. Zurich American Ins. Co.,* 2009 WL 362030, at *5-6 (M.D. La. 2009) (courts can use gap-filling power provided by Arbitration Act to choose *situs* within a signatory country); *see also Matter of Arbitration Between U.S. Lines Inc. and Liverpool and London S.S. Protection and Indem. Ass'n*, *Ltd*., 833 F. Supp. 350, 353 (S.D.N.Y. 1993) (in case where situs choice left to third party, "the issue of venue is itself a proper issue for resolution by arbitration").

Finally, the Court rejects Plaintiff's argument that the agreement in question did not involve at least one non-American citizen, property located abroad, or envisage performance or enforcement abroad. At least one party to the 2005 agreement, CPUK, is a foreign national. *See* Opp. At Ex. A at Ex. A (¶1) (Rec. Doc. 9). Further, the agreement clearly envisages performance abroad, since some of the coke sales and delivery thereof were to take place in Britain. *Id.* (¶3(g)). Defendant has also attached an affidavit from a CPUK manager attesting that coke sales under the 2005 agreement actually took place overseas. *Id.* at Ex. F (Higgins affidavit). The

5

Court concludes that the agreement "falls under" the Convention and accordingly, the motion to

remand is denied.[2]

**B. Motion to Stay Pending Arbitration**

There is a "strong federal policy in favor of enforcing arbitration agreements." *Dean*

*Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217 (1985). The Federal Arbitration Act states that:

> If any suit or proceeding be brought in any of the courts of the United States upon
> any issue referable to arbitration . . . the court . . . shall on application of one of
> the parties stay the trial of the action until such arbitration has been had in
> accordance with the terms of the agreement. . . .

9 U.S.C. § 3. An application for arbitration by either party under Section 3 "requests the district

court to refrain from further action in a suit pending arbitration, and requires the court to first

determine whether there is a written agreement to arbitrate between the parties, and then whether

any of the issues raised are within the reach of the agreement." *Texaco Exploration and*

*Production Company v. AmClyde Engineered Products Company, Inc*., 243 F.3d 906, 909 (5th

Cir. 2001) (citing *Midwest Mechanical Contractors, Inc. v. Commonwealth Construction*, 801

F.2d 748, 750 (5th Cir. 1986)). "If the issues in a case are within the reach of that [arbitration]

agreement, the district court has no discretion under section 3 to deny the stay." *Id.* (citation

omitted). The Court has already determined that the instant dispute arises from an agreement

containing a broad arbitration clause and that the dispute relates to that agreement. As a result,

the issues in this case arguably arise under the arbitration agreement and thus this Court has no

---

[2] Plaintiff does not appear to argue that the agreement does not "relate to" the dispute
within the meaning of 9 U.S.C. § 205. Regardless, it is apparent that the arguments advanced by
Defendant "meet the low bar of 'relates to'" as defined by the Fifth Circuit in *Beiser,* 284 F.3d at
669. Plaintiff also states in its Motion to Remand that Defendant failed to include a "copy of all
process" as required by 28 U.S.C. § 1446(a), but did not present evidence of this failure or make
any argument regarding it in its briefs, and accordingly the Court declines to consider this point.

discretion to deny the requested stay. *Id.* (citing *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F .2d 752, 754-55 (5th Cir. 1993)).

### III. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the Motion to Remand (Rec. Doc. 6) is **DENIED.** The Motion to Stay Pending Arbitration  (Rec. Doc. 5) is **GRANTED** and the matter is **STAYED**. The Clerk is directed to **ADMINISTRATIVELY CLOSE** the case subject to being re-opened on the motion of either party.

New Orleans, Louisiana, this 17th day of August, 2009.

**HELEN G. BERRIGAN**
**United States District Judge**