UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAIN CII CARBON, LLC,** | **CIVIL ACTION** |
| **VERSUS** | **NO: 09-cv-4169** |
| **CONOCOPHILLIPS COMPANY** | **SEC. "C"** |

## ORDER AND REASONS[1]

This matter comes before the Court on a motion to vacate arbitration award pursuant to 9 U.S.C. § 10(a)(4) filed by Defendant, ConocoPhillips Company ("COP"). (Rec. Doc. 47). Plaintiff, Rain CII Carbon LLC ("Rain CII") opposed this motion (Rec. Doc. 58), and in turn, filed a cross-motion to confirm arbitration award. (Rec. Doc. 59). Having considered the record, memoranda of counsel, and the applicable law, Defendant's Motion to Vacate Arbitration Award is hereby DENIED and Plaintiff's Cross-Motion to Confirm Arbitration Award is GRANTED for the following reasons.

### I. Background

Plaintiff, Rain CII and Defendant, COP are parties to a long-term contract for the sale of green anode coke ("coke"). (Rec. Doc. 47-2). Under the Green Anode Coke Sales Agreement ("Agreement"), the coke price is calculated using a formula that is designed to capture the market price. *Id*. at 4. If during the contract term either party reasonably concludes that the contract formula no longer yields a market price, that party may re-open price negotiations. *Id.* at 6. If the

---

[1]Max Weiss, a second-year student at Tulane University Law School, assisted in preparing this Order.

parties are unable to reach an agreement on a replacement formula, they would then submit the matter to a "baseball" arbitration to be administered by the American Arbitration Association ("AAA") under its Commercial Rules. *Id.* at 6, 13. "Baseball" arbitration requires that each party submit a proposal and the arbitrator is to select one of the two. *See UMG Recording Inc. v. MySpace, Inc.,* 526 F.Supp.2d 1046, 1068 n.8 (C.D. Cal. 2007) (describing "baseball arbitration"). In this case, both Rain CII and COP would submit to the arbitrator one replacement mechanism for determining the price of coke under the Agreement, and the arbitrator would then select from the two proposed mechanisms the one which in his judgment, is more likely to yield a market level price for coke under the Agreement for the balance of the term in effect. (Rec. Doc. 47-2 at 6). This selected replacement formula would remain in effect for at least eight quarters. *Id.*

COP alleges that in 2007, due to market changes, the contract formula in the Agreement no longer yielded a market price for COP's coke, and in early 2008, COP re-opened pricing negotiations. (Rec. Doc. 47-1 at 3). After a year of negotiating, the parties were unable to reach an agreement on a replacement formula, and COP initiated arbitration. *Id.* Upon the appointment of the arbitrator, the parties modified their agreement to arbitrate, which included a request for a "reasoned" award. (Rec. Docs. 47-1 at 5; 47-2 at 48). The arbitrator consented to the parties' request, acknowledging that he would render a reasoned award. (Rec. Doc. 47-2 at 54). The parties participated in a final evidentiary hearing on September 27, 28, and 29, 2010, during which each party submitted their "baseball" price formula proposal. (Rec. Doc. 58 at 5). The parties stipulated the amount of damages each side would owe depending upon which price formula the arbitrator selected. (Rec. Doc. 47-1 at 4). In December 2010, the arbitrator requested that the parties submit proposed draft awards, which both parties submitted on February 3, 2011. (Rec. Docs. 58-2; 58-3).

On March 7, 2011, the arbitrator rendered his Award, applying Rain CII's price formula and

thus granting Rain CII all the relief it requested, which totaled over $17 million. (Rec. Doc. 58-1). The arbitrator had used the structure of COP's proposed draft award as a template for his Award. (Rec. Docs. 58-1 at 1-8; 58-2 at 19-26). The Award was structured around the same six issues framed in COP's proposed draft award, and like COP's proposed draft award, was eight pages long and contained much of the same wording and reasoning. (Rec. Docs. 58-1 at 1-8; 58-2 at 19-26). COP contends that although the arbitrator used the form of COP's proposal, he deleted "all" reasoning and instead inserted only a conclusory ruling. (Rec. Doc. 47-1 at 6). After three paragraphs summarizing the contentions of the parties, the ruling on the issue of which of the two replacement formulas is more likely to achieve a market level price states:

> "Based upon the testimony, exhibits, arguments, and submissions presented to me in this matter, I find that the price formula contained Section 4 of the Green Anode Coke Sales Agreement dated August 23, 2005, as amended January, 2007, and July, 2008, shall remain in effect for the balance of the term as stated in the contract." (Rec. Doc. 58-1 at 4).

Although the Award was overwhelming in favor of Rain CII because it applied Rain CII's proposed price formula, two phrases, originally from COP's draft proposal were included in the Award:

> "Applying the replacement formula from April 1, 2008 until March 31, 2009 results in an increased payment by Rain CII to COP of $6,920, 234.07. Offsetting the amount of the true up COP owes Rain CII results in a net payment owed by Rain CII to COP in the amount of $1,357,480.82." *Id.* at 5; *see* Rec. Doc. 58-2 at 25.

and

> "Applying the contractual rate of interest to the outstanding amount for the number from April 1, 2009 to February 3, 2011 resulting in the sum of $214, 984.96." *Id.* at 7; *see* Rec. Doc. 58-2 at 25.

COP contends that the inclusion of these phrases indicates that the arbitrator erroneously applied both proposed price formulas in his Award determination instead of only one pursuant to

proper "baseball arbitration." (Rec. Doc. 47-1 at 1, 2, 7, 8). Rain CII, on the other hand, attributes the inclusion to "inadvertent clerical errors" as the arbitrator inadvertently included remnants from COP's draft proposal (which he had used as a template for the final Award). (Rec. Doc. 58 at 7-8). On March 25, 2011, Rain CII filed a Motion to correct Award, requesting that the arbitrator correct these inconsistencies. (Rec. Doc. 58-3 at 19-21). On April 18, 2011, the arbitrator granted Rain CII's Motion to Correct Award by removing the above-mentioned sentences from the Award, noting that they were "inadvertently included sentences" constituting "clerical errors." (Rec. Doc. 58-1 at 1, 2).

## II. Law and Analysis

### Judicial Review under the Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides the means for enforcing arbitral awards, via a judicial decree confirming, vacating, modifying or correcting an award. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). The Court's review of an arbitral award made under the FAA is exceedingly deferential. *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 380 (5th Cir. 2004). "The federal courts will defer to the arbitrators' resolution of the dispute whenever possible." *Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir. 1990). Neither a mistake of fact nor a mistake of law made by the arbitrator is grounds for vacating an arbitral award. *Apache Bohai Corporation LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007) (citing *Brabham*, 480 F.3d at 380).

Under the Federal Arbitration Act ("FAA"), there are four means by which an arbitration award may be vacated. 9 U.S.C. §10. These are, (1) where the award was procured by

corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or any of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a)(1)-(4). Courts must confirm an arbitration award unless it is vacated, modified, or corrected as sections 10 and 11 of the FAA allow.[2] *Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) (citing *Hall Street*, 552 U.S. at 587).

COP argues that the Arbitration Award should be vacated under 9 U.S.C. § 10(a)(4) on the grounds that arbitrator exceeded his power by (1) failing to conduct a proper "baseball" arbitration by selecting both parties' proposals, and (2) failing to render a reasoned award, both pursuant to the parties' agreement to arbitrate. *Id.* at 11.

### Whether the Arbitrator Exceeded His Power

Because arbitration is a matter of contract, the court must examine the language of the arbitration agreement to determine its scope, before it can determine if the arbitrator exceeded his power. *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002). If an arbitrator acts "contrary

---

[2] 9 U.S.C. § 11 reads in part, "the United States court...may make an order modifying or correcting the award upon the application of any party to the arbitration–(a) Where there was an evident material miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award. (b) Where the arbitrators have awarded on a matter not submitted to them....(c) Where the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11. Section 11 is immaterial in this case because neither party applied to this Court for modification or correction of the award.

to express contractual provisions" or ignores plain limitations on his power in the arbitration agreement, he has exceeded his power and the resulting award will be vacated by a reviewing court. *Apache Bohai*, 480 F.3d at 401 (quoting *Delta Queen Steamboat Co. v. AFL-CIO*, 889 F.2d 599, 604 (5th Cir. 1989)). When an arbitrator ignores the express provisions of an agreement to arbitrate, he has gone beyond the scope of his authority, and the award must be vacated. *Houston Lighting & Power Co. v. Int'l Broth. of Elec. Workers , Local Union No. 66,* 71 F.3d 179, 184 (5th Cir. 1995) ("If the language of the agreement is clear and unequivocal, an arbitrator is not free to change its meaning."). "A reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of arbitration." *Brook v. Peak Int'l Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002) (citing *Executone Info. Sys. Inc. v. Davis*, 26 F.3d 1314, 1320-21 (5th Cir. 1994)).

> The Arbitration Agreement between Rain CII and COP provides that:
>
> Each party shall submit to the arbitrator one replacement mechanism for the determining the price of Green Anode Coke to be supplied under this Agreement and the arbitrator shall be required to select from the two proposed mechanisms that one which, in the judgment of the arbitrator, is more likely to yield a market level price for Green Anode Coke to be supplied under this Agreement for the balance of the term then in effect.

(Rec. Doc. 47-2 at 6). The January 5, 2010, Scheduling and Procedural Order states: "The Arbitrator shall provide a Reasoned Award within thirty (30) days from the filing of all Post-Hearing Submissions as required by the Arbitrator." *Id* at 54. Additionally, during the closing arguments of arbitration proceeding, the arbitrator referenced his duty under the agreement to provide a reasoned award:

> BY THE ARBITRATOR: . . . Secondly, under the terms of the arbitration, it talks about a reasoned award. There are basically three types: There's a standard award where you give no reason, you just make a finding and it's all just on one page. And it looks something like that analysis with a dollar amount. Then you have a reasoned award where some reasons are given; usually the one ones that are

6

>    considered the most important. Than[sic], lastly, you have a full-finding of fact
>    and conclusions award which, as I read the underlying contract, does not call for
>    that in this case unless you gentlemen disagree. With that being said, what I would
>    like to have each side do is prepare a proposed reasoned award respectively, for
>    each side.

*Id.* at 70. It is clear that according to the provisions of the Arbitration Agreement and the agreement of the parties, the arbitrator was required to select and apply one of the two proposed price formulas as well as to provide a reasoned award. The issue thus becomes whether the arbitrator failed to do either task pursuant to his express duties under the Agreement. This Court will address each allegedly failed task in turn.

### A.   Failure to Conduct Baseball Arbitration in Accordance with the Parties' Agreement by Selecting Both Parties' Proposed Price Formulas

If the arbitrator did in fact, as COP alleges, perform a "hybrid" application of the parties' proposals, it would be contrary to the parties' express agreement and thus render vacatur appropriate as the arbitrator exceeded his power. (Rec. Doc. 47-1 at 12); *See Volt Info Scis. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 479 (1989) (noting that "the FAA's primary purpose [is to ensure that] private agreements to arbitrate are enforced according to their terms."). However, Rain CII claims that the inclusion of COP's proposed formula on the fifth page of the Award was merely a clerical error resulting from the arbitrator's inadvertent vestige of two sentences from COP's proposed award, which the arbitrator used as a template for his Award. (Rec. Doc. 58 at 14). This Court agrees with Rain CII.

AAA Commercial Rule 46 states that "[w]ithin 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award." AAA, Commercial Arbitration Rules and Mediation Procedures, R. 46 at 17-18 (2009) *available at* http://www.adr.org/sp.asp?id=22440;

*see Brown v. Witco Corp.,* 340 F.3d 209, 219 (5th Cir. 2003) (noting that an arbitrator can "correct a mistake which is apparent on the face of his award."). COP contends that deeming the unauthorized award to both parties as a mere clerical error is "dubious." (Rec. Doc. 63-1 at 8). COP points to the fact that the arbitrator "'erroneously'" included a "paragraph-long substantive award to COP"[3] which "coincidentally" corresponded to the inclusion of an interest calculation two-pages later[4] as proof that their inclusion was not merely a clerical error. *Id.* at 9; *See* (Rec. Doc. 58-1 at 5, 70. According to COP, the arbitrator exceeded his power by selecting both proposal formulas, and even if it was inadvertent, the inclusion of both formulas constitutes more than a clerical error, and thus the arbitrator violated AAA rules by revising the Award. *Id.* at 9-10.

However, this Court finds that the inadvertently included sentences constitute clerical errors under AAA Rule 46 and therefore the arbitrator was within his authority to revise the Award. COP agrees that the arbitrator used the form of its proposed award as a template for his Award. (Rec. Doc. 47-1 at 6). It is not beyond the imagination that the arbitrator, after using COP's proposal award as a template, could inadvertently neglect to remove certain parts from the original form. Revelatory to this Court is the language of the Order granting Rain CII's Motion to Correct Award, in which the arbitrator recognizes that the inadvertently included sentences constituted clerical errors under AAA rule 46:

> IT IS FURTHER ORDERED that the following inadvertently included sentences in the March 7, 2011 Award of Arbitrator be, and are, hereby removed from the Award of Arbitrator pursuant to AAA Commercial Rule 46, as these sentences constitute clerical errors:

---

[3]This "paragraph" consists of two sentences. (Rec. Doc. 58-1 at 5)

[4]COP contends that the interest award of $214,984.96 would be the correct amount of interest for the alleged erroneously included $1,357,480.82 award to COP. (Rec. Docs. 63-1 at 9; 58-1 at 5,7).

> 1. "Applying the replacement formula from April 1, 2008 until March 31, 2009 results in an increased payment by Rain CII to COP of $6,920,234.07. Offsetting the amount of the true up COP owes Rain CII results in a net payment owed by Rain CII to COP in the amount of $1,357, 480.82" (March 7, 2011 Award of Arbitrator, p. 5 Issue 3 (1), ¶ 2).
> 2. "Applying the contractual rate of interest to the outstanding amount for the number from April 1, 2009 to February 3, 2011 results in the sum of $214,984.96." (March 7, 2011 Award of Arbitrator, p. 7, Issue 4).
> In all other respects, the Award dated March 7, 2011 is hereby reaffirmed.

(Rec. Doc. 58-1 at 10-11). Although COP maintains that the inclusion of their proposal in the Award was not clerical error despite the above declaration of the arbitrator to the contrary, this Court, as a "reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of arbitration." *Brook,* 294 F.3d at 672 (citing *Executone.* 26 F.3d at 1320-21). Therefore, this Court holds that the arbitrator did not exceed his authority because the inclusion of both formula proposals constituted a clerical error, correctable under AAA Commercial Rule 46.

### B.     Failure to Render a Reasoned Award

As mentioned *supra*, it is clear that the provisions of the Agreement required the arbitrator to render a reasoned award, and if he failed to do so he thus exceeded his power and therefore vacatur is proper. *Houston,* 71 F.3d at 184. The issue thus becomes whether the arbitrator actually rendered a reasoned award.

As the arbitrator articulated in the final arbitration hearing, a reasoned award is one in which "some reasons are given." (Rec. Doc. 47-2 at 70). Fifth Circuit case law is plainly lacking in definitions and examples of what constitutes a reasoned award or what level of reasoning is sufficient. The only Fifth Circuit decision giving any guidance is *Sarofim v. Trust Co. of the West*, in which the court adopted the United States District Court for the Northern District of Illinois' broad definition of a reasoned award as "'something short of findings and conclusions but more than

9

a simple result.'" 440 F.3d 213, 215 n.1 (5th Cir. 2006) (quoting *Holden v. Deloitte & Touche LLP*, 390 F.Supp.2d 752, 780 (N.D. Ill. 2005)).

COP claims that the arbitrator's Award was "completely devoid of reasoning," and was nothing more than a "bare result." (Rec. Doc. 63-1 at 5). COP relies heavily on the case *Cat Charter LLC v. Schurtenberger*, from the United States District Court for the Southern District of Florida. 691 F.Supp.2d 1339 (S.D. Fla. 2010); (Rec. Doc. 47-1 at 13, 14). In that case, like in this one, the parties agreed to a reasoned award from the arbitrator. *Id.* at 1344. The "reasoned award" simply stated each claim and the prevailing party. *Id.* at 1341-42. The court held that the arbitrators failed to render a reasoned award because they "merely announced the winners and losers." *Id.* at 1344. The court further reasoned that "'not doing enough'- whether that consists of issuing an award without the requisite number of arbitrators, or not providing the level of reasoning that the parties have required- is a basis for concluding that the arbitrators have exceeded their powers." *Id.* at 1345.

COP also relies on the Ninth Circuit's decision in *Western Employers Insurance. Co. v. Jefferies & Co.*, 958 F.2d 258 (9th Cir. 1992). In that case, the Ninth Circuit reversed a district court decision refusing to vacate an arbitration award that failed to include findings of fact and conclusions of law, as agreed upon by the parties. *Id.* at 262. The court reasoned that by failing to provide findings of fact and conclusions of law in the arbitration award, the arbitrators "clearly failed to arbitrate the dispute according to the terms of the arbitration agreement." *Id.*

This case is distinguishable from both *Cat* and *Western*. Unlike in *Cat*, where the deficiently reasoned award provided no discussion besides the bare result of the claims, here, the Award contains three and a half pages of background and discussion, including a three paragraph discussion of the proposed price formulas of both parties, before arriving at the one sentence

conclusion that COP contends is indicative of a failure to render a reasoned award.  *Cat*, 691 F.Supp.2d at 1341-42; (Rec. Doc. 58-1 at 1-4).  Although the Award may not contain the level of explanation COP would ideally have liked, one could certainly distill some level of reasoning between the elements of the parties' proposed formulas discussed in the Award and the arbitrator's brief ruling.  (Rec. Doc. 58-1 at 4); *see Lyeth v. Chryster Corp.*, 929 F.2d 891, 896 (2nd Cir. 1991) (noting that an award's rational basis may be ascertained by reading the record evidence).  This case is distinguishable from *Western* because in that case, the arbitrators were required to make full findings of fact and conclusions of law, whereas here, the Award needed only be reasoned. *Western*, 958 F.2d at 262; (Rec. Docs. 47-2 at 54, 70).

This Court finds guidance in the Sixth Circuit case, *Green v. Ameritech Corp.,* in which the parties entered into an arbitration agreement that included a provision stating:

> The arbitrator's award shall be accompanied by an opinion which explains the arbitrator's decision with respect to each theory advanced by each Plaintiff and the arbitrator's calculation of the types of damages, in any, awarded to each Plaintiff.

200 F.3d 967, 970 (6th Cir. 2000).  The arbitrator's six-page opinion set forth the plaintiff's claims of age and race discrimination and retaliation, focusing primarily on the description of the allegedly discriminatory corporate process.  *Id.* at 971.  The opinion concluded as follows:

> *AGE DISCRIMINATION*
> Considering all the evidence, the Arbitrator finds that Plaintiff Daniel Green has not met his burden of proof that the decision to terminate his employment in November of 1992, constituted age discrimination in violation [of the] Elliott-Larsen Civil Rights Act.
> *RACE DISCRIMINATION*
> Considering all the evidence, the Arbitrator finds that Plaintiff Daniel Green has not met his burden of proof that the decision to terminate his employment in November of 1992, constituted race discrimination in violation [of the] Elliott-Larsen Civil Rights Act.
> *RETALIATION*
> Considering all the evidence, the Arbitrator finds that Plaintiff Daniel Green has not met his burden of proving, in accordance with the standards set under the Elliott-

> Larsen Civil Rights Act, that retaliation for protected activity was a factor which made a different in the decision to terminate his employment in November of 1992. The Arbitrator finds no evidence to support the Plaintiff's position that relation was, in any way, a factor in Plaintiff Daniel Green's termination.
> J.A. at 44-45 (Arbitrator's Op.).

*Id.* The Sixth Circuit held that although the arbitrator's opinion was minimal, it was still adequate to satisfy the arbitration agreement's requirement to "explain" the arbitrator's decision. *Id.* at 978. The court reasoned that the arbitrator did "explain" why the defendant prevailed on each theory, namely that the plaintiff had not met his burden of proving that the decision was discriminatory or retaliatory. *Id.* at 976. The court further reasoned that "[i]f parties to an arbitration agreement wish a more detailed arbitral opinion, they should clearly state in the agreement the degree of specificity required." *Id.*

The facts in *Green* are similar to those in the present case. Like the arbitration agreement in *Green*, which required that the arbitrator "explain [his] decision," here, the arbitration agreement required to arbitrator to explain his decision by giving "some reasons." 200 F.3d at 970; (Rec. Doc. 47-2 at 54, 70). Furthermore, like the agreement in *Green*, the agreement here failed to stipulate the specific degree of reasoning the arbitrator needed to include in his arbitration award. 200 F.3d at 970; (Rec. Doc. 47-2 at 54, 70). The arbitration award in *Green* is of a similar length to the one in this case, and similarly sets forth the background and nature of the claims. 200 F.3d at 971; (Rec. Doc. 58-1). The extent of reasoning in the conclusion of the award in *Green*, which the court held to be sufficient to properly "explain" the opinion, is almost identical to the extent of reasoning in the Award in this case. 200 F.3d. at 971, 976; (Rec. Doc. 58-1 at 10-11). If COP or Rain CII had wanted a more detailed reasoned arbitral opinion, they should have clearly stated in their Agreement the degree of specificity and detail required. *Id.* at 976.

The Fifth Circuit's definition of a reasoned award is vague, and the threshold for determining whether an arbitration award is reasoned is low. *See Sarafim,* 440 F.3d at 215 n.1 (quoting *Holden,* F.Supp.2d at 780). A reasoned award falls somewhere between a full finding of fact and conclusion of law and simply a statement declaring the results. *Id.* One could certainly distill some level of reasoning between the elements of the parties' proposed formulas discussed in the Award and the arbitrator's ruling. (Rec. Doc. 58-1 at 4). As discussed earlier, although COP may understandably feel that the Award did not contain a helpful level of reasoning or the level of reasoning either party had envisioned, nothing in the record indicates that the arbitrator was to provide more than simply "some reasons" in a broad sense. (Rec. Doc. 47-2 at 70). It appears that what COP truly desired was a full-finding of fact and conclusions of law, which as the arbitrator explained, is distinct from a reasoned award for which the parties had actually requested from the arbitrator. *Id.* Given that a "reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of arbitration," this Court holds that the arbitrator did provide a reasoned award. *Brook,* 294 F.3d at 672 (citing *Executone,* 26 F.3d at 1320-21). Therefore, the arbitrator did not exceed his power.

### III. Conclusion

For the foregoing reasons,

IT IS ORDERED that COP's Motion to Vacate Arbitration Award is DENIED. (Rec. Doc. 47).

IT IS FURTHER ORDERED that Rain CII's Cross-Motion to Confirm Arbitration Award is GRANTED. (Rec. Doc. 59).

New Orleans, Louisiana, this 27th day of June, 2011.

_____
**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**