UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAIN CII CARBON LLC,                           CIVIL ACTION

VERSUS                                          NO. 09-4169

CONOCOPHILLIPS COMPANY                          SECTION "C" (4)

## ORDER AND REASONS[1]

Before the Court is plaintiff's, RAIN CII CARBON LLC, motion to enforce the Court's judgment against defendant CONOCOPHILLIPS COMPANY and its assignee PHILLIPS 66 COMPANY. Rec. Doc. 90. PHILLIPS 66 COMPANY opposes the motion. Rec. Doc. 92. Having considered the record, the memoranda of counsel and the law, the Court DENIES the motion for the following reasons.

## I. BACKGROUND

ConocoPhillips Company[2] ("Phillips") and Rain CII Carbon LLC ("Rain CII") entered into a long-term agreement dated August 23, 2005, for the supply of green anode coke ("coke"). Rec. Doc. 90-3. Section 4(a) of the agreement contains a complicated formula for calculating the current market price of the coke over the duration of the agreement. Rec. Doc. 90-3 at 5. Section 4(c) of the agreement permits the parties to re-open price negotiations in the event that either party reasonably concludes that the price formula does not accurately reflect relevant market

---

[1] Nicholas Roosevelt, a second-year student at Northwestern Law School, assisted in preparing this Order and Reasons.

[2] In May 2012, ConocoPhillips Company assigned substantially all of its refining and marketing business to Phillips 66 Company. The two entities are collectively referred to as Phillips herein. *See* Rec. Doc. 90-3 at 1 (for a description of the contractual relationship between the two entities).

1

conditions. Rec. Doc. 90-3 at 7. If the parties are unable to re-negotiate the price formula, either party may declare an impasse and the matter will be submitted to arbitration conducted in accordance with arbitration provisions included in Section 19 of the agreement. *Id*. In addition to addressing dispute resolution procedures, Section 19 states: "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration . . . ." Rec. Doc. 90-3 at 14. In the case of arbitration regarding the price formula, the parties are each responsible for proposing a "replacement mechanism" price formula to the arbitrator, who is then authorized to select the price formula that will most accurately reflect market conditions. Rec. Doc. 90-3 at 7.

Phillips initiated price formula re-negotiations in 2007. Rec. Doc. 90-3 at 20. Beginning in 2009, Rain CII began purchasing coke from Phillips, under protest, at the replacement mechanism price formula advocated by Phillips. Rec. Doc. 90-3 at 24-25. That same year, Phillips demanded arbitration. Rec. Doc. 90-1 at 4. On March 7, 2011, an arbitrator ruled in favor of the price formula advocated by Rain CII–the same price formula included in the original agreement. Rec. Doc. 90-3 at 23. The arbitrator ruled that the original price formula "shall remain in effect for the balance of the term as stated in the contract." *Id.* The ruling also awarded a money judgment of $17,702,585.33 for, among other damages, the coke purchased by Rain CII under protest at the price formula advocated by Phillips. Rec. Doc. 90-3 at 24-25. The ruling stated that the "Award is final and binding with respect to all claims and counterclaims presented to the arbitrator. All relief not expressly granted herein, is denied." Rec. Doc. 90-3 at 27.

Following the arbitration ruling, Phillips filed a motion for the Court to vacate the arbitration award. Rec. Doc. 47. Rain CII filed a cross-motion to confirm the arbitration ruling.

Rec. Doc. 59. The Court denied Phillips' motion and granted Rain CII's cross-motion, confirming the arbitration ruling. Rec. Doc. 71. The parties do not dispute that the Court's order granting Rain CII's cross-motion gave the arbitration ruling the same force and effect as a judgment of the Court. *See* 9 U.S.C. §13 (2013); *see also* Rec. Doc. 77-1 at 1; Rec. Doc. 96 at 5.

The Court then granted Phillips' motion to approve a supersedeas bond, allowing Phillips to appeal the Court's judgment without first paying the money judgment to Rain CII. Rec. Doc. 83. The supersedeas bond order did not address Phillips' obligation to prospectively invoice Rain CII according to the price formula selected by the arbitrator; however, Phillips' memorandum in opposition to Rain CII's current motion contains a declaration by one of its managers stating that all invoices issued to Rain CII since the date of the arbitration ruling have been issued according to the price formula selected in the arbitration ruling. Rec. Doc. 92-1. Rain CII does not address the declaration regarding invoicing in its reply to Phillips' memorandum in opposition. *See* Rec. Doc. 96. On April 3, 2012, the Fifth Circuit affirmed the Court's order confirming the arbitration ruling. Rec. Doc. 84. On April 6, 2012, the parties jointly represented to the Court that the money judgment had been satisfied in full. Rec. Doc. 87.

Rain CII now argues that Phillips has failed to satisfy the Court's judgment by seeking to initiate a new arbitration proceeding to re-calculate the price formula. Rec. Doc. 90. At issue is the following language in Section 4(c) of the agreement between Rain CII and Phillips:

> "The [arbitrator's] selected replacement mechanism shall remain in effect for at least eight quarters, after which either party may reinitiate the [arbitration] process described in the preceding sentence if the party reasonably concludes that the replacement mechanism does not accurately reflect changes in relevant market conditions arising after selection of the replacement mechanism." Rec. Doc. 90-3 at 7.

Rain CII advocates for a construction of the arbitration ruling and of its agreement with Phillips that makes explicit "that the replacement mechanism [price formula] selected would remain in effect 'for the balance of the term of the contract' or for at least eight quarters 'as stated in the contract.'" Rec. Doc. 96 at 4. Rain CII makes the conclusion that the arbitrator's selected replacement mechanism price formula did not become final for the purposes of triggering the eight-quarter clause until the Fifth Circuit affirmed the Court's judgment; therefore, Rain CII argues that Phillips is violating the terms of the judgment by seeking arbitration regarding the price formula on or before April 2, 2014.[3] Rec. Doc. 90-1 at 6. Rain CII's motion requests an order "prohibiting and nullifying Phillips' attempt to circumvent the Court's Judgment by attempting to invoke the price re-opener provision of the 2005 Contract prematurely and in violation of the eight-quarter requirement contained in the 2005 Contract." Rec. Doc. 90 at 2.

Phillips counters that a new dispute, never before addressed or settled by arbitration or the Court's judgment, has arisen over whether the eight-quarter provision ties to the date of the arbitration ruling or the finally appealed judgment. *See* Rec. Doc. 92 at 8-12; *see also* Rec. Doc. 73. Phillips argues that this new dispute should be settled by arbitration pursuant to Section 19 of the agreement, not by the Court on a Rule 70 motion. Rec. Doc. 92 at 11-12. Phillips also argues that Rain CII has not provided a sufficient legal argument for this Court to conclude that the eight-quarter period did not start until the Fifth Circuit affirmed the Court's judgment. Rec. Doc. 92 at 14-15.

## II. LAW AND ANALYSIS

---

[3] In its reply to Phillips' memorandum in opposition, Rain CII argues that the eight-quarter period would not conclude until June 30, 2014. Rec. Doc. 96 at 9.

4

**A. Judicial Review under the Federal Arbitration Act**

The Federal Arbitration Act ("FAA") provides the means for enforcing arbitral awards, via a judicial decree confirming, vacating, modifying, or correcting an award. *See* 9 U.S.C. §§ 9-13; *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008). The Court's review of an arbitral award under the FAA is exceedingly deferential. *Brabham v. A.G. Edwards & Sons , Inc.*, 376 F.3d 377, 380 (5th Cir. 2004). "The federal courts will defer to the arbitrators' resolution of the dispute whenever possible." *Anderman/Smith Operating Co. V. Tennessee Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir. 1990). Pursuant to 9 U.S.C. § 13, a court's judgment "shall have the same force and effect, in all respects, as, and [is] subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered."

Rule 70(a) of the Federal Rules of Civil Procedure provides:

If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specific, the court may order the act to be done-at the disobedient party's expense-
by another person appointed by the court. When done, the act has the same effect as if done by the party." Fed.R.Civ.P. 70(a).

Rule 70 "is operative only after a judgment is entered." *De Beers Consol. Mines v. United States*, 325 U.S. 212, 218, 65 S.Ct. 1130, 1133 (1945). The Rule may be used to enforce judgments requiring specific acts. *Gilbert v. Johnson*, 490 F.2d 827, 829 (5th Cir. 1974) (per curiam) (aff'd in relevant part on remand, 601 F.2d 761). In *Gilbert*, a Veterans Administration ("VA") doctor that had been fired without a statutorily-mandated board hearing successfully sued to be reinstated pending a board hearing and to receive compensation for costs associated with his

5

termination. *Id.* at 828 n. 1. After the VA did not pay the damages and was allegedly confining the doctor's work to menial tasks unrelated to his previous employment, the doctor unsuccessfully moved to enforce the judgment under Rule 70. *Id.* at 829. On appeal, the *Gilbert* court ruled that, "on their face," the VA appeared to be in violation of the lower court's judgment and so reversed and remanded the denial of the doctor's Rule 70 motion. *Id.* at 830.

**B. Enforcing a Judgment Confirming an Arbitration Ruling**

Rain CII asks the Court to use Rule 70 to order Phillips not to take the specific act of seeking arbitration regarding a reinitiated dispute over the price formula. At the core of the issue before the Court is the disputed meaning and effect of the eight-quarter provision in Section 4(c) of the agreement between the parties. In its two memoranda supporting its motion to enforce the judgment, Rain CII cites no legal authority regarding the use of Rule 70 to enforce an arbitration ruling confirmed by a court judgment under the FAA, much less the use of the Rule in the context of an accompanying dispute over the meaning of a contract provision not clearly settled in that arbitration ruling. Indeed, both parties have cited few legal decisions to support their arguments, making it necessary not only to review the parties' arguments, but also to provide independent reasoning in order to satisfactorily rule on Rain CII's motion.

The sole legal decision cited to by Rain CII regards prison official defendants that failed to comply with a court judgment ordering the enactment of an environmental plan. *See Morales Feliciano v. Hernandez Colon*, 771 F. Supp. 11, 12 (D.P.R. 1991). In *Morales,* the court had previously found the prison officials in contempt for not conforming to a portion of the environmental plan that required the prison officials to contract for services related to evaluations and corrective action plans by a certain date. *Id*. The court ruled that it was reasonable to use Rule 70 to appoint a special master that would contract on behalf of the prison

officials, noting the "public reform" context of the case and that the prison officials had made clear that they did not otherwise intend to contract for the services. *Id.* at 13.

The *Morales* court cited a Fifth Circuit case, *Gates v. Collier*, to support its holding. *Id.* (citing *Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980)). In *Gates,* a state was found liable for unconstitutional practices at one of its prisons and, after extensive litigation, the lower court ordered the state treasurer to satisfy a money judgment against it for attorney fees and costs. *Gates*, 616 F.2d at 1270. The state argued that, by its own law, it could not be ordered to satisfy the money judgment, but it was only responsible for satisfying the judgment on a voluntary basis. *Id.* The *Gates* court held that Rule 70 could be properly used to order payment, where the "the defendants have made it abundantly clear that they intend to resist the judgment until the bitter end." *Id.* at 1271-72.

The Court is not persuaded that either *Morales* or *Gates* provide the Court with guidance on the appropriateness of using Rule 70 to order Phillips not to seek arbitration. To start, neither case regards enforcement of an arbitration ruling and the case before the Court does not fall within the public reform context present in both *Morales* and *Gates*. Unlike *Gates*, the motion before the Court does not regard satisfaction of an express money judgment rendered by a court. Unlike *Morales*, Phillips has not previously been found in contempt, and unlike both *Morales* and *Gates,* Phillips has not shown a clear intention to resist the Court's judgment until the bitter end. It is true that Phillips appealed the Court's judgment, but it did so in accordance with the law and satisfied the money judgment promptly after its appeal to the Fifth Circuit was unsuccessful. Rec. Doc. 83; Rec. Doc. 87. Furthermore, the parties do not apparently dispute that Phillips complied with the arbitrator's selected price formula on all invoices processed after the arbitration ruling, even while Phillips sought to vacate the ruling and later appeal the Court's

7

judgment. Rec. Doc. 92-1; Rec. Doc. 96. Perhaps most significantly, *Gates* and *Morales* regard violations of what appear to have been clear court orders, whereas in this case there is a question of whether the arbitration ruling or the Court's judgment ever ruled on an interpretation of the eight-quarter provision that would control the disposition of Rain CII's motion.

To this point, Phillips argues that the meaning of the eight-quarter provision was never addressed at any point during the first arbitration process or subsequent FAA confirmation proceedings. Rec. Doc. 92 at 1-2. Phillips cites to a number of Fifth Circuit decisions supporting the general conclusion that a court should defer to arbitration proceedings where the parties have agreed to a broad arbitration provision to resolve disputes. *See e.g. Naura Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.,* 138 F.3d 160, 165 (5th Cir. 1998). In *Naura,* the Fifth Circuit made clear that, when reviewing the enforceability of an arbitration ruling, it would presume that "when parties include . . . a broad arbitration clause [in their contract], they intend the clause to reach all aspects of the relationship." *Id.* (quoting *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 n. 2 (5th Cir. 1993)). Furthermore, the Fifth Circuit has previously reversed a denied motion to stay pending arbitration where the parties had signed a number of interrelated agreements, but not all of them plainly included a broad arbitration clause. *See Neal v. Hardee's Food Sys., Inc.,* 918 F.2d 34, 37-38 (5th Cir. 1990). The *Neal* court made clear that it would not deny arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible [to] an interpretation which would cover the dispute at issue." *Id.* at 37 (internal quotation marks omitted).

While *Naura* dealt primarily with a court's standard for reviewing the enforceability of arbitration provisions, not their effect in a court's judgment, and *Neal* dealt with the force of arbitration provisions in the context of interrelated agreements, not an interrelated agreement and

8

judgment, the cases and their predecessors signal a general preference in the Fifth Circuit to defer to arbitration. Here, the parties have an agreement containing a broad arbitration clause that would clearly cover the dispute over the eight-quarter provision absent a related prior arbitration ruling. *Naura* and *Neal* therefore support Phillips' argument that the Court should not rule on a binding interpretation of the eight-quarter provision without it first being submitted to an arbiter. They do not, however, fully settle the central issue before the Court–whether the prior arbitration ruling confirmed by the Court effectively incorporated an interpretation of the eight-quarter provision that controls the disposition of Rain CII's motion.

      A recent Fifth Circuit decision provides helpful guidance on this remaining issue. *See Tricon Energy Ltd. v. Vinmar Intern., Ltd.*, No. 12-20100, 2013 WL 1859079 at *5-*8 (5th Cir. May 3, 2013) (case may be subject to review or rehearing). In *Tricon*, the Fifth Circuit affirmed a lower court confirmation of a breach of contract arbitration ruling that awarded damages and interest to Tricon Energy. *Id.* at *1. The arbitration ruling clearly selected a rate at which pre- and post-award interest on any damages would accrue; however, the lower court rejected Tricon Energy's argument that any interest after the lower court's judgment should accrue at the arbitration ruling rate, instead of accruing at the statutorily-mandated rate for postjudgment interest. *Id.* at *1-*2. The *Tricon* court concluded that the arbitrator had the authority to set a postjudgment rate other than the statutory rate, but would have had to expressly include any non-statutory postjudgment rate in the arbitration ruling in order for it to override the statutory rate. *Id.* at *7-*8. The *Tricon* court then reviewed the arbitration ruling in detail to determine if a non-statutory rate had been clearly selected–finding it had not been. *Id.* The court concluded that mere "boilerplate language" regarding the accrual of interest in the arbitration ruling was insufficient to show that the arbitration panel intended to award a non-statutory rate. *Id.* at *8.

9

The *Tricon* court also rejected the argument that a non-statutory postjudgment rate should have been awarded, because the awarded party had expressly requested a non-statutory rate in front of the arbitration panel. *Id.* The court supported this rejection by pointing to language in the ruling that stated "'all claims not expressly granted are hereby denied.'" *Id.*

*Tricon* addressed a separate matter pertaining to judgments and applied a heightened legal standard related to postjudgment interest rates; however, the Court is persuaded that the *Tricon* court's process for reviewing an arbitration ruling provides helpful guidance on how to determine whether or not a controlling interpretation of the eight-quarter provision was included in the arbitration provision. Like the awarded party in *Tricon*, Rain CII can point only to the language "as stated in the contract" to support its contention that the arbitration ruling expressly included an interpretation of the eight-quarter provision. Rec. Doc. 90-3 at 23; Rec. Doc. 96 at 3. This language in the ruling can easily be described as "boilerplate." Furthermore, even accepting "as stated in the contract" as a clear implication of the force of the eight-quarter provision, Rain CII provides nothing to suggest its interpretation of the meaning and effect of the eight-quarter provision should control. Even less convincing than Tricon Energy's argument that a non-statutory rate had been selected merely because it had advocated for the rate during arbitration, Rain CII cannot even support its argument with evidence that it or Phillips ever addressed the meaning and effect of the eight-quarter provision in front of either the arbitrator or the Court. Like the arbitration ruling in *Tricon*, the arbitration ruling in this case makes clear that relief not expressly granted is denied. Rec. Doc. 90-3 at 27. Because Rain CII cannot show that the arbitration ruling contained an interpretation of the eight-quarter provision, *Naura* and *Neal* provide sufficient grounds for the Court to defer judgment on the disputed meaning of the provision and instead allow the dispute to first be submitted to an arbitrator.

The Court is not persuaded that either the arbitration ruling or the Court's judgment clearly contained an interpretation of the eight-quarter provision that would, for the purpose of satisfying the Court's judgment, prohibit Phillips from once again seeking arbitration over the price formula. Rain CII cites no relevant legal authority to support its argument and a plain reading of the arbitration ruling does not indicate that it provided an interpretation of the eight-quarter provision that controls Phillips' ability to seek arbitration. Because the agreement clearly provides that any claim arising out of or relating to the agreement will be resolved by arbitration and the force of that provision is supported by the Fifth Circuit, it would be inappropriate to issue a Rule 70 order that would include a "first pass" interpretation of the disputed eight-quarter provision in Section 4(c) that has not previously been ruled on by an arbitrator. Rec. Doc. 90-3 at 14, 20. The dispute over the meaning of the eight-quarter provision should therefore be settled by arbitration, which will clarify whether or not Phillips may reinitiate price formula arbitration. The parties will have the same rights to seek a court judgment confirming, vacating, modifying, or correcting the arbitration ruling as they had following the first arbitration proceeding. Rec. Doc. 71 at 4.

    Accordingly,

    IT IS ORDERED that defendant's motion is DENIED. (Rec. Doc. 90).

    New Orleans, Louisiana, this 24th day of June, 2013.

                                                    **HELEN G. BERRIGAN**
                                                  **UNITED STATES DISTRICT JUDGE**